UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                                        CIVIL CASE NO. 05-50095
                            Plaintiff,

v.                                      HONORABLE PAUL V. GADOLA
                                        U.S. DISTRICT JUDGE
GREGORY ANDRE SPOTTSVILLE JR.,

                            Defendant.

_____/


**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**


I.      **Introduction**

        Defendant Gregory Andre Spottsville Jr. is charged with one count of distribution of five

grams or more of cocaine base in violation of 18 U.S.C. § 841(a)(1).  Before the Court is

Defendant's motion to suppress evidence, filed on April 26, 2006.  Defendant seeks to suppress the

evidence obtained by police following a warrantless entry and search.

II.     **Background**

        Between 5:00 p.m. and 6:00 p.m. on October 12, 2004, Detective Scott Rust, a Grand Blanc

Township police officer assigned to the Flint Area Narcotics Group ("FANG"), drove a confidential

government informant to 1023 Vermilya Street, Flint, Michigan.  Although from the street the

residence appears to be a single family home, the dwelling actually contains two separate

apartments, one on the first floor and one on the second.  The first floor apartment is accessible

through the front door that faces Vermilya Street but the second floor apartment is accessible only

from a recessed side door located on the west side of the house near the rear of the dwelling. The rear half of the house, including the area around the entrance to the upstairs apartment, is encircled by a six-foot high wooden stockade fence. There are only two openings in the fence, both of which face the street; one opening is on the east side of the house for a driveway and the other opening is on the west side of the house to accommodate the walkway that leads to the door to Apartment #2, the upstairs apartment. Both of these openings lead only to Vermilya Street.

Upon arriving at 1023 Vermilya, Officer Rust provided the informant with two-thousand dollars in pre-marked currency with which to make a controlled purchase of cocaine from one or more individuals at that address. Several other officers, at least four but possibly as many as ten, were present in separate vehicles for the purpose of providing surveillance. Officer Rust testified that after the informant exited the vehicle and began going around the side of the house, the informant disappeared from his sight. He never saw the informant enter Apartment #2.

After only one to two minutes inside, the informant returned to Officer Rust's vehicle with the purchased cocaine. The informant provided a physical description of the individual that sold the cocaine, known now as Gregory Spottsville Jr., but known at that time only as "G". "G" was described a heavy-set black male, with a thin mustache, wearing a white tee-shirt and a baseball cap. The informant also told Officer Rust that there were several other individuals in the second floor apartment at the time of the controlled purchase. The informant and Officer Rust then drove to a predetermined location where the informant was searched for additional contraband and the purchase money. Following negative search results for both items, Rust notified the officers still present at the 1023 Vermilya location that the buy was successful. He also gave them the

2

description of Defendant.  Officer Rust did not participate in any of the later events.

Just five minutes after the buy, "worried about losing [the] money and any other evidence," the officers approached the door to the second floor apartment.  Oral Arg. on Def.'s Mot. to Suppress Evidence Tr., p. 8 (June 6, 2006).  Three or four officers, armed but not in uniform, formed the entry team, while an unknown number of others remained on surveillance.  Seeking entry, the officers approached the door to Apartment #2 and knocked.  Even though the officers could hear movement upstairs, no one answered the door.  Officers on surveillance indicated that through the windows they could see individuals moving around within the apartment.  Thirty to forty seconds after the officers knocked, the officers made a forced entry into the apartment.

After making their way up the stairs, the officers found and seized the four male individuals located within the small apartment.  Defendant was among those individuals seized and the only one that matched the physical description given by the informant.  Another individual seized, Larry Montgomery, indicated he was responsible for renting the apartment.  Officer Donald Urban, a member of the entry team and also a member of FANG, took Montgomery into the kitchen and obtained verbal and written consent to search the premises.  A search of the location failed to turn up any additional narcotics.  On the floor of the closet in a rear bedroom however, the officers found the pre-marked currency used in the controlled purchase torn into pieces.  Police also seized a digital scale they believed to be used in the sale of narcotics located in a garbage bag in the kitchen.

## III.    Legal Standard

The Fourth Amendment to the Constitution has consistently drawn a line at the threshold of the entrance to a house, a line that may not be crossed without a warrant, absent exigent

3

circumstances. *Payton v. New York*, 445 U.S. 573, 590 (1980). When attempting to demonstrate an urgent need that justifies a warrantless entry, the police bear a "heavy burden." *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984); *United States v. Sangineto-Miranda*, 859 F.3d 1501, 1511 (6th Cir. 1990). "[E]xigent circumstances will be present when there is an urgent need to prevent evidence from being lost or destroyed." *Sangineto-Miranda*, 859 F.3d at 1511 (citing *United States v. Adamo*, 742 F.3d 927, 948 (6th Cir. 1984), *cert. denied sub nom. Freeman v. United States*, 469, U.S. 1193 (1985)).

The mere possibility of the loss or destruction of evidence is not sufficient justification for a warrantless entry; instead, "affirmative proof of the likelihood of the destruction of evidence, along with the necessity for the warrantless entry are required." *United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990) (citing *United States v. Hayes*, 518 F.2d 675, 677-78 (6th Cir. 1975)). "In judging the government's claim of exigent circumstances, the court must consider the totality of the circumstances, as well as the 'inherent necessities of the situation at the time.' " *Sangineto-Miranda*, 859 F.2d at 1512 (citing *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)*, cert. denied sub nom. Agran v. United States*, 414 U.S. 833 (1973)).

A warrantless entry into a residence may be " 'justified if the government demonstrates: (1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that the loss or destruction of evidence is imminent.' " *United States v. Straughter*, 950 F.2d 1223, 1230 (6th Cir. 1991) (citing *Sangineto-Miranda*, 859 F.2d at 1512).

**IV.    Analysis**

      **A.  Standing**

In every challenge to the legality of a search or seizure this Court must first begin with a determination of whether the Defendant has proper standing to challenge the evidence in question. *See United States v. Richards*, 147 F. Supp. 2d 786, 788 n.1 (E.D. Mich. 2001) (Gadola, J.), *aff'd*, 56 Fed. Appx. 667 (6th Cir. 2003). Although frequently an issue of dispute, in the instant case the Government does not challenge Defendant's standing nor his reasonable expectation of privacy as to the 1023 Vermilya Street residence. Consequently, this Court will advance directly to the merits of Defendant's claim that the evidence seized from the residence was the ill-gotten proceeds of an unlawful warrantless entry and search by the police.

## B. Exigent Circumstances

Examining the validity of a warrantless entry into a residence, the Court first recognizes that the Government bears a heavy burden in its efforts to demonstrate an urgent need that justified its warrantless entry. *Welsh*, 466 U.S. at 749. Absent this urgent need, crossing the threshold of a home without a warrant violates the Fourth Amendment. *See Payton*, 445 U.S. at 590. "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." *Roaden*, 413 U.S. at 505.

When officers claim that the exigent circumstances present are the loss or destruction of evidence, such a warrantless entry " 'is justified if the government demonstrates: (1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that the loss or destruction of evidence is imminent.' " *Straughter*, 950 F.2d at 1230 (citing *Sangineto-Miranda*, 859 F.2d at 1512). The officers belief that evidence will be lost or destroyed not only must to be reasonable, but

5

must be "objectively reasonable." *Sangineto-Miranda*, 859 F.2d at 1512.

### 1. Third-Party Presence within the Apartment

The Government contends that the situation that confronted the officers at 1023 Vermilya Street was squarely within the purview of the *Sangineto-Miranda*, two-part test. *See Straughter*, 950 F.2d at 1230 (citing two part test of *Sangineto-Miranda*, 859 F.2d at 1512.). With respect to the first prong of the test, the officers argue that, based on the information obtained from the confidential informant recently inside the apartment, Defendant was not alone. Oral Arg. on Def.'s Mot. to Suppress Evidence Tr., p. 31 (June 6, 2006). Defendant does not appear to challenge the reasonableness of the officers belief with respect to the first prong of the test and neither does this Court. The officers belief, based on credible information recently received, that third-party individuals were present within the apartment was without question, objectively reasonable given the circumstances of the situation. *See Sangineto-Miranda*, 859 F.2d at 1512.

### 2. Imminent Loss or Destruction of Evidence

Regarding the second prong of the *Sangineto-Miranda* test, however, the Government's claim merits much more scrutiny. The Government claims the officers had a fear that evidence would be lost or destroyed during the one to five hours it may have taken to get a warrant. This fear stemmed from their inability during that time to establish or maintain surveillance due to the awkward position of the door to the Apartment #2.[1] As a result of this alleged inability to observe

---

[1]Despite the Government's claim regarding the inability to watch the door, Defendant demonstrated through the use of photographic evidence at the hearing that the door was able to be seen from a position just two lots to the west of the residence. Furthermore, because the rear of the house was entirely surrounded by a six-foot high fence, anyone going to or leaving from Apartment #2 would have had to pass directly along Vermilya Street, a location that was readily

the door, the officers feared that anyone inside the apartment, possibly including a disguised Defendant, could have left the residence without the knowledge of the officers, absconding and possibly taking evidence along with them. The officers therefore believed, because evidence may have been lost without intervention, that they were justified in entering the apartment without a warrant, seizing the location and individuals. *See Illinois v. McArthur*, 531 U.S. 326, 331 (2001).

The officers, however, have failed to establish any specific reason why they feared the evidence or the targets would imminently be lost or destroyed. It is not enough that there exists a mere possibility that evidence will be lost or destroyed. Instead, the Government must show exigent circumstances by demonstrating that there is an "affirmative likelihood" that evidence will be lost or destroyed. *Radka*, 904 F.2d at 362 (citing *United States v. Hayes*, 518 F.2d 675, 677-78 (6th Cir. 1975)). In the present case, the officers generalized fear based on their alleged inability to conduct a full surveillance of the apartment door does not demonstrate, in any way, a justification for a reasonable belief that it was likely that individuals inside the apartment were planning to imminently destroy or abscond with the evidence. *Cf. Straughter*, 950 F.2d at 1231 (" The inability of the police to watch all of the doors of the apartment all of the time cannot support a reasonable belief that third parties were inside."). The officers failed to present any evidence that the targets had become aware of the police presence, that the suspects had a look-out system to detect such a presence, that they were preparing to move their drug dealing operation, or that they had become aware that they had been the subject of the recent controlled purchase. *See Sangineto-Miranda*, 859 F.3d at 1512. *See also United States v. Socey*, 846 F.2d 1439, 1447 (D. D.C. 1988). Without evidence of these or

observable.

7

similar events indicating imminent action about to be taken by Defendant or one of the other targets of the investigation, the Government has failed to demonstrate that any belief that they needed to take action "now or never" to safeguard evidence, is not objectively reasonable. *Roaden*, 413 U.S. at 505; *Sangineto-Miranda*, 859 F.3d at 1512. Without more, this Court finds the officers generalized fear of the loss of evidence is insufficient to carry the Government's heavy burden to demonstrate the existence of exigent circumstances justifying a warrantless entry.

It is without question that after the officers approached the apartment door and knocked, exigent circumstances existed. *See Unites States v. Richard*, 994 F.3d 244, 249-50 (5th Cir. 1993) (A "warrantless entry became a forgone conclusion once [the] officers knocked.") According to the testimony, immediately following the officers' knock, the officers at the perimeter of the residence could see the individuals inside the apartment begin to scramble. Despite hearing the knock, those inside refused to answer the door. But occupants aware that law enforcement personnel are knocking at the door are not required to answer the door. *United States v. Chambers*, 395 F.3d 563, 569 (6th Cir. 2005). It appears that it was only after the occupants refusal to answer the door, thirty to forty seconds after the knock, and after the officers realized the targets were not going to answer the door, that the officers forced their entry into the apartment. It is well established that police officers "must be responding to an unanticipated exigency rather than simply creating the exigency for themselves." *Id.* at 566. Knocking on the door and identifying themselves as police, the police clearly created their own exigent circumstances following their approach to the door. Consequently, this Court finds that once the police officers knocked, there could be no legitimate justification for a warrantless entry based on exigent circumstances.

C.  Independent Source Doctrine

The Government argues that even if the entry was illegal, the evidence obtained from the residence is nonetheless admissible because the police, based on the controlled purpose, had an independent basis for a search warrant which they were prepared to obtain after securing the residence.  The Government contends that the only reason the search warrant was not obtained after the entry was because of the intervening receipt of Montgomery's consent to search.

The independent source doctrine allows the admissibility of evidence, even following illegal investigatory activity, if the evidence in question was discovered through a source independent from the illegal activity.  *See Murray v. United States*, 487 U.S. 533, 537 (1988) (cited in *Straughter*, 950 F.3d 1231).  In *Murray*, the Court noted:

> [t]he ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

*Id*. at 542 (emphasis added).

The Government's argument that under *Murray*[2] the evidence is admissible because the Government *could* have received a warrant based on probable cause, is unpersuasive to this Court. *Murray* does not necessarily obviate the need for a warrant.  Instead, *Murray* allows the neutral and detached judicial review required for the warrant, using information independent of the information

---

[2]The Government's brief cites only to *Straughter*, 950 F.2d 1223, however the relevant portion of that case relies on the holding of the United States Supreme Court in *Murray*, 487 U.S. 533.  Consequently, this Court directly examines *Murray* as it applies to the instant case.

obtained during the illegal activity, to resuscitate the otherwise excluded evidence.  *Id.* at 537-38.

In the present case, however, a warrant was never obtained; an impartial magistrate never reviewed

any alleged valid justification the Government had for obtaining a warrant.  Instead, the Government

relies on the possibility that it *could* have received a warrant combined with the later received

voluntary consent, as allowing the evidence to be admitted.  Without more, however, the Court finds

that the mere possibility that the Government could have received a warrant is insufficient.

Allowing a warrantless entry and search in the instant case, based on the possibility that the

Government could have received a warrant but did not,  would necessarily obliterate any need for

a warrant whenever the police have effected a controlled purchase of drugs.  The Court does not find

support for such a sweeping decision in the instant case.

      Furthermore, the Government's reliance on Montgomery's verbal and written consent as a

valid justification for the search is also misplaced.   "When an individual consents to a search after

an illegal entry is made, the consent is not valid and 'suppression is required of any items seized

during the search . . . , unless the taint of the initial entry has been dissipated before the 'consents'

to search were given.' "  *Chambers*, 395 F.3d at 569 (quoting *United States v. Buchanan*, 904 F.2d

349, 356 (6th Cir. 1990) (internal citations omitted)).   Considering Montgomery's consent, that

consent was given only minutes after the armed officers forced their way through the door and up

the stairs to the apartment.   "Dissipation of the taint resulting from an illegal entry 'ordinarily

involves showing that there was some significant intervening time, space, or event.' "  *Buchanan*,

904 F.2d at 356 (quoting *United States v. Vasquez*, 638 F.2d 507, 528 (2d Cir. 1980)).   The

Government has made absolutely no showing that there were any intervening events in the moments

that followed the officers' entry but preceded Montgomery's consent.  Therefore, without evidence

of any dissipation of the taint of the illegal entry, Montgomery's consent cannot serve as a valid

basis for the search following the illegal entry.  *See Chambers*, 395 F.3d at 569.

**V.  Conclusion**

Accordingly, for the aforementioned reasons, **IT IS HEREBY ORDERED** that Defendant's

motion to suppress evidence [docket entry 14] is **GRANTED**.


**SO ORDERED.**

Dated:   August 30, 2006                          s/Paul V. Gadola
                                                  HONORABLE PAUL V. GADOLA
                                                  UNITED STATES DISTRICT JUDGE

11

Certificate of Service

I hereby certify that on   August 30, 2006   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

James C. Mitchell; Kenneth R. Sasse                        , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.


s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845